UNITED STATES of America

v.

Robert A. LEBOVITZ.

Crim. No. 80–148.

United States District Court,
W.D. Pennsylvania.

Feb. 29, 1984.

See also 3 Cir., 716 F.2d 893;  D.C., 506
F.Supp. 249.

David M. Curry, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Harold Gondelman, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

This matter is before the court on the defendant's Motion for New Trial filed on

December 1, 1983. After receiving the government's response to said motion, a hearing was held on January 24, 1984.

The exhaustive history of this criminal litigation began with an indictment filed on September 19, 1980. Said indictment charged the defendant with one (1) count of conspiracy pursuant to 18 U.S.C. § 371 and thirteen (13) counts of mail fraud pursuant to 18 U.S.C. §§ 1341 and 2.

A jury trial began on January 15, 1981 and it was concluded with a verdict of guilty on all counts on January 28, 1981. A judgment and commitment order dated March 5, 1981 provided that the defendant, as to count 1, was to serve a term of imprisonment of one (1) year and one (1) day and was directed to pay a fine in the amount of $7,500 and the costs of prosecution.

As to counts two (2) through fourteen (14), the mail fraud counts, the defendant was sentenced to the custody of the attorney general or his authorized representative for a period of imprisonment of one (1) year and one (1) day and was to pay a fine in the amount of $500 on each count.

The sentences of imprisonment at counts two (2) through fourteen (14) were to run concurrently with each other and concurrently with the sentence imposed as to count one (1). The total fine was in the amount of $14,000.

The judgment and commitment order was the subject of a direct appeal filed on March 11, 1981 and was affirmed in an opinion dated January 21, 1982. See *United States v. Lebovitz*, 669 F.2d 894 (3d Cir.1982), *cert. denied*, 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982).

The facts of this somewhat complex mail fraud/conspiracy have been set forth in this court's unpublished opinion (dated November 17, 1982, Docket No. 79) and were briefly reiterated in the Court of Appeals opinion, *United States v. Lebovitz*, at 895.[1]

Subsequent to the defendant's direct appeal, a collateral attack was made on May

---

1. A copy of this court's memorandum of November 17, 1982 is attached.

3, 1982 by the filing of a motion to dismiss indictment, a motion for new trial and a motion for other appropriate relief and sanctions. After a number of miscellaneous proceedings and hearings, oral argument was heard on the defendant's motions set forth above on September 30, 1982. Subsequent to said oral argument, we issued a memorandum and order of November 17, 1982 directing that the defendant's motion to dismiss indictment and the defendant's motions for a new trial and other appropriate relief and sanctions be denied.[2] A notice of appeal of said order was filed on November 26, 1982. On June 29, 1983, the Court of Appeals for the Third Circuit issued a judgment order in lieu of a formal mandate affirming this court's opinion and order of November 17, 1982.[3]

*Certiorari* was denied on November 28, 1983 after petition to the United States Supreme Court. Thereafter, the United States Court of Appeals for the Third Circuit reissued a judgment order in lieu of a formal mandate to be treated in all respects as a mandate on December 1, 1983 affirming this court's opinion and order of November 17, 1982. Therefore, this court now has jurisdiction to dispose of the present motion for new trial.

Defendant has set forth ten (10) grounds for relief in the motion presently before the court. Although a number of said grounds were raised in prior appeals and others are untimely as not being grounds based on newly discovered evidence,[4] all will be addressed to some degree in this opinion.

### Motion for New Trial

In the first instance, it should be noted that the court has broad powers to grant motions for new trial if the court believes that a legitimate miscarriage of justice has occurred.[5] However, motions for new trial based on the weight (sufficiency) of the evidence are not favored and are to be granted sparingly,[6] and only in exceptional cases when the evidence preponderates heavily against the verdict and where a gross injustice would occur if the court failed to act.[7]

Great caution should be utilized when a motion for new trial is based on newly discovered evidence. Wright, *Federal Practice and Procedure:* Criminal 2d § 557 (1982). Five factors must be weighed by the district court in determining a motion for new trial based on newly discovered evidence:

"(a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new

---

2. See attached order of November 17, 1982.

3. The docket at Number 90A reflects that on July 8, 1983 this court received an order from the Court of Appeals recalling the certified judgment order of June 29, 1983. A stay was granted by the Court of Appeals since defendant filed a Petition for Writ of Certiorari at No. 296, October Term, 1983. On January 9, 1984, the Supreme Court denied a petition for rehearing.

4. Rule 33, Fed.R.Crim.P., provides as follows:
"The court on motion of a defendant may grant a new trial to him if required in the interest of justice.... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. *A motion for a new trial based on any other grounds*

*shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period."* (Emphasis supplied.)

5. Wright, Federal Practice and Procedure: Criminal 2d § 551 (1982) and cases cited therein. *Cf. United States v. Gross,* 375 F.Supp. 971, 974 (D.N.J.1974) *aff'd.,* 511 F.2d 910 (3d Cir. 1975), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975).

6. *United States v. Gross, supra,* headnote 5 at p. 974 citing *United States v. Provenzano,* 240 F.Supp. 393 (D.N.J.1965), *aff'd.,* 353 F.2d 1011 (3d Cir.1965), *cert. denied,* 384 U.S. 905, 86 S.Ct. 1340, 16 L.Ed.2d 358 (1966).

7. *United States v. Kermidas,* 332 F.Supp. 1312, 1316 (M.D.Pa.1971), *aff'd.,* 468 F.2d 238 (3d Cir. 1972).

trial, the newly discovered evidence would probably produce an acquittal." *United States v. Herman*, 614 F.2d 369, 371 (3d Cir.1980), citing *United States v. Ianelli*, 528 F.2d 1290 (3d Cir.1976) and *United States v. Howell*, 240 F.2d 149, 159 (3d Cir.1956). *Cf. United States v. Meyers*, 484 F.2d 113 (3d Cir.1973); *United States v. Bertone*, 249 F.2d 156, 160 (3d Cir.1957); *United States v. Nigro*, 253 F.2d 587 (3d Cir.1958).

■ These five factors constitute what is commonly known as the "Berry Rule." [8] Factor five of the "Berry Rule" incorporates a probability standard. This probability standard provides that a new trial is required only where newly discovered evidence would "probably" change the result. This is the general standard usually applied to newly discovered evidence. Where there is an assertion that the evidence at the trial was perjured, however, a different test is applied.

### The Larrison Rule

■ This test entails a stricter standard to be applied where there is newly discovered evidence of false testimony and is referred to as the "Larrison Rule." See Wright, *Federal Practice & Procedure: Criminal 2d* 557.1 (1982). The "Larrison Rule" specifically holds that when a contention has been made that a government witness testified falsely at trial, the test should be:

"(a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it a jury 'might' have reached a different conclusion. (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial."

*Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928).

The "Larrison Rule" was specifically adopted by the United States Court of Appeals for the Third Circuit, in *United States v. Meyers*, 484 F.2d 113 (3d Cir. 1973).

Factor two of the "Larrison Rule" incorporates a might or possibility standard. *This "might" standard is that a new trial is required where without the false testimony the jury "might" have reached a different conclusion.* See 8A *Moore's Federal Practice* § 33.06[1] (1980).

The "Berry Rule" as modified by the "Larrison Rule," when applied to the case *sub judice*, leads us to the conclusion that defendant has not met the Larrison test. This conclusion will be elaborated further in this opinion.

We need go no further than to relate the facts of this case to the first factor of the three prong "Larrison Rule," i.e., is the court reasonably well satisfied that the testimony given by a material witness is false? After an analysis of the facts in this case, and in particular the testimony of Dr. Rosenbloom and Mrs. Noll, we are not convinced that the testimony of either of said witnesses was false. Therefore, there is no need to go on and analyze the other two prongs of the three prong "Larrison Rule." Simply stated, the defendant has not met his burden under *Larrison, supra*, to show us that the testimony of Dr. Rosenbloom or Mrs. Noll was false or perjured. This conclusion is elaborated further in this opinion where we discuss in detail grounds number two (2), three (3), seven (7), and eight (8) of the defendant's motion for new trial.

### Grounds for Motion for New Trial

In the defendant's motion for new trial, ten (10) grounds are set forth for relief.[9] A number of these grounds were raised and thoroughly addressed by the United States Court of Appeals for the Third Circuit both on the defendant's direct appeal. *United States v. Lebovitz*, 669 F.2d 894, *cert. denied*, 456 U.S. 929, 102 S.Ct. 1979,

---

**8.** *Berry v. State,* 10 Ga. 511 (1851).

**9.** Actually, grounds 9 and 10 simply state the reasons why this court now has jurisdiction to entertain the motion for a new trial.

72 L.Ed.2d 446 (1982), and in the defendant's collateral attack raising the issue of the participation of ICPI Agent Daniel Saccani, an employee of a private organization, the Insurance Crime Prevention Institute, in the investigation of this case, and also raising matters with respect to Agent Saccani's alleged improper participation in grand jury proceedings (Paragraph 4 of the motion for new trial). *United States v. Lebovitz*, 716 F.2d 893 (3d Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 484, 78 L.Ed.2d 681 (1983).

The defendant's primary claim for relief under Rule 33 brings into question an allegation that the United States knowingly used perjured testimony to obtain a guilty verdict before the court. The defendant alleges that evidence discovered subsequent to his conviction supports a finding of government prosecutorial misconduct and use of known, unreliable, and perjured testimony to taint the character of the defendant before the jury in an effort to gain a conviction. Defendant also maintains that "the court and jury were willfully misled by the government's offer to introduce the day books as reliable patient records [and 5" × 8" patient charts] of treatment." These primary claims are set forth in paragraphs two (2), three (3), and eight (8) and also in the last sentence of paragraph seven (7) of the defendant's motion for new trial.

Inasmuch as these are the most serious challenges in support of the motion for new trial, they shall be addressed at length by the court later in this opinion.

With respect to the grounds set forth in the motion for new trial, it should be noted that paragraphs five (5), six (6), and the first part of paragraph seven (7) (re: conspiracy charge) need not be addressed since such grounds must be raised within 7 days of final judgment.

■ Final judgment on the direct appeal was the denial of *certiorari* by the United States Supreme Court, *United States v.*

*Lebovitz*, 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). This time limit is jurisdictional and the court is without power to consider an untimely motion for new trial. Wright, *Federal Practice & Procedure: Criminal* 2d § 558 (1982), *United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), *United States v. Fontanez*, 628 F.2d 687 (1st Cir.1980), *cert. denied*, 450 U.S. 935, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981).

Nevertheless, this court shall briefly address the grounds raised in said paragraphs five (5), six (6), and seven (7) later in this opinion.

Initially, it must be stated that the evidence at trial was both abundant and overwhelming that the defendant, Robert A. Lebovitz, was proved guilty beyond a reasonable doubt.[10]

■ Assuming *arguendo* that the testimony of Dr. Rosenbloom and Mrs. Noll was false and perjured, the testimony of other witnesses in the case who were material witnesses, is more than substantial, overwhelming, and corroborative to convince the jury that the defendant was guilty beyond a reasonable doubt. Said testimony appears in the trial transcript at pp. 162 to 293 (Jack H. Pincus, M.D.); pp. 367 to 373 (Vanessa Vandergrift Furey-a patient of Dr. Pincus); pp. 386 to 393 (David Nejak-a patient of Dr. Pincus); pp. 414 to 432 (Joan Frank, Robert Raszewski, Walter Senchesen-patients of Dr. Pincus); pp. 452 to 481 (Martha Senchesen, Lorraine D. DiDomenico, Rebecca Kindler, Constance Cherrone-patients of Dr. Pincus); pp. 557 to 586 (Ann E. Baumeister, Sharon Campbell-patients of Dr. Pincus); pp. 603 to 627 (Pamela Smilack, Robin Jo Smilack, David Argall-patients of Dr. Pincus); pp. 653 to 666 (Marie Stewart-a patient of Dr. Pincus); pp. 816 to 873 (Joan Posa, Robert Etherington, Nancy Etherington-patients of Dr. Pincus); and, pp. 712 to 815 (Attor-

---

**10.** See this court's comments in its memorandum opinion of November 17, 1982 attached hereto.

ney Louis Kwall-former *partner* of defendant).[11]

No useful purpose would be served in quoting from the testimony of the above-named witnesses in this opinion. Furthermore, elaborating on other testimony contained in the two volumes of the trial transcript which is 1,355 pages in length, would be merely cumulative review for purposes of the motion now before the court. Suffice it to say that the testimony of other witnesses, including a number of attorneys, claims adjusters, claims agents, and other employees of insurance companies as well as the testimony of two secretaries of Dr. Pincus, further enhances this court's conclusion that the evidence against the defendant presented to the jury was both abundant and overwhelming.

We shall now begin a review of each of the grounds asserted by the defendant in his motion for new trial.

The grounds will be addressed in reverse order of importance.

### Grounds Number One and Four

As his first "new" ground for relief, defendant asserts that in a bench opinion, *United States v. Litman, et al.,* (W.D.Pa., December 1, 1982), 131 Pittsburgh Legal Journal 79 (1983), decided subsequent to the case *sub judice,* Judge Cohill of this court granted a motion for judgment of acquittal reasoning that taking the evidence in a light most favorable to the United States, a reasonably-minded jury would have reasonable doubt and, therefore, not convict.

■ It should be pointed out that this court cannot be bound by facts presented in another case, since the record of both cases will show that although there may have been two (2) similar witnesses [12] the testimony, cross-examination, and defense counsel's approach thereto, as well as the trial tactics in general were greatly divergent. For example, although Dr. Rosen-

bloom was extensively cross-examined in the *Litman* case, *supra,* concerning his day books, patient charts, etc., counsel in the case at hand did not utilize such an approach. Stated simply, this court cannot be bound by facts presented at another trial in this district. A common accepted legal tenet provides that "if you change the facts, you change the law," (*mutatis factis lex mutatur*).

A similar analysis to the above can be applied to ground number four (4) where the defendant sets forth that on December 27, 1982, in the case of *United States v. Lichtenstein,* Criminal No. 80–78 (W.D.Pa. 1982),[13] Judge McCune of this court suppressed certain documents produced in compliance with grand jury subpoenas, and, by so doing, precluded retrial and trial of the case. The facts before Judge McCune in the *Lichtenstein* case, *supra,* bear no weight with this court. Furthermore, ground four (4) raises again the question of improprieties by ICPI Agent Daniel Saccani, a matter thoroughly addressed on collateral appeal, *United States v. Lebovitz,* 716 F.2d 893, *supra.* We find no merit to either ground one (1) or four (4) of defendant's motion for new trial.

### Grounds Number Five and Six

In ground number five (5), defendant contends that the government witness, Dr. Pincus, did not specifically state that he had an express or implied agreement with the defendant to inflate medical bills and that, therefore, said witness failed to connect the defendant with a conspiracy as alleged in Count one (1) of the indictment. This appears to be an attack on the sufficiency of the evidence which should have been properly raised on direct appeal or in the defendant's prior motion for new trial. It is not newly discovered evidence under the provision of Rule 33, Fed.R.Crim.P., nor can a challenge to the sufficiency of testimony over three (3) years subsequent

---

11. Since there are numerous government exhibits in support of the above referred to testimony, we shall not list said exhibits in this opinion.

12. Dr. Rosenbloom and Mrs. Noll, his secretary.

13. Reported at 131 PLJ 85 (1983).

to the judgment of conviction, and more than a year after final judgment, be considered new evidence. Furthermore, the United States Court of Appeals for the Third Circuit more than adequately commented on the sufficiency of the evidence to convict in connection with certain mailings underlying the conspiracy charge [14] and as we have stated above, the overall evidence was overwhelming to support the jury's verdict of guilty of *the conspiracy* and mail fraud charges.

This court, therefore, finds no merit in the defendant's fifth ground for relief.

As ground number six (6), the defense takes the position that there was no direct evidence of knowledge and intent other than the testimony elicited from the defendant's law partner, Louis Kwall. Since this matter of intent and knowledge was artfully addressed by Judge Sloviter on direct appeal,[15] no further comment is necessary here. Furthermore, this also appears to be an untimely attack on the sufficiency of the evidence.

### Grounds Number Two, Three, Seven, and Eight

As has been stated above, defendant's primary claim for relief lies in his allegations concerning the knowing use of perjured testimony of Dr. Rosenbloom and Mrs. Noll, use of unreliable documentary evidence allegedly unsupported by the testimony, and the use of Dr. Rosenbloom's testimony by the United States to willfully confuse the jury, all of which allegations allegedly resulted in prosecutorial misconduct which has now only come to light after review of the Rosenbloom and Noll testimony in *United States v. Litman, supra.*

14. *United States v. Lebovitz,* 669 F.2d 894, at 897–898 (3rd Cir.1982).

15. *United States v. Lebovitz,* 669 F.2d 894 (3d Cir.1982).

16. Counsel for defendant provided the court with excerpts of Dr. Rosenbloom's testimony in the *Litman* case beginning with the cross-examination of Dr. Rosenbloom by Attorney Armstrong and concluding with the cross-examina-

We have already commented on this court's position concerning testimony with respect to *facts* from another case. However, defendant contends the above grounds, in light of Judge Cohill's ruling in *Litman,* warrant a new trial *as a matter of law.* We disagree.

### Alleged Perjured Testimony of Dr. Rosenbloom and Mrs. Noll

An allegation of the purposeful presentation by the United States of perjured testimony is an allegation which cannot be treated lightly by this court. Therefore, a thorough review of the trial transcript was performed to determine if there is any support for such an allegation. A comparison was also made with the testimony of Dr. Rosenbloom in the Litman case.[16] In reviewing the *Litman* trial transcript, we note that Judge Cohill at no time stated or concluded that either Dr. Rosenbloom's testimony or Mrs. Noll's testimony was perjured. In reviewing the trial transcript of this case, we find absolutely no evidence of a deliberate attempt by the United States to present perjured testimony or unreliable documentary evidence. On the contrary, a review of the testimony of both Dr. Rosenbloom and Mrs. Noll indicates not a hint of false or perjured testimony.[17]

After lengthy and thorough research, this court has found only one case where a witness's credibility was challenged subsequent to his testimony at a trial and said challenge to the witness's credibility resulted in the granting of a new trial. See *Mesarosh v. United States,* 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956). However, it must be noted that in *Mesarosh* no motion for new trial under Rule 33, Fed.R.Crim.P., was filed by counsel for the defendant.

tion by Attorney Gondelman, a total of 185 pages. Nothing in said transcript leads the court to the conclusion that Dr. Rosenbloom's testimony in the *Litman* case should have any effect on these proceedings.

17. The testimony of Dr. Rosenbloom appears in the trial transcript at pp. 91 to 145, and the testimony of Mrs. Noll appears at pp. 149 to 160.

The Supreme Court of the United States in *Mesarosh, supra,* granted a motion for new trial in an instance where the Solicitor General of the United States moved that the case be remanded to the district court for determination as to the credibility of the testimony of a key government witness at trial. The Solicitor General asserted that the government believed the testimony of said witness at trial "was entirely truthful and credible," but that, on the basis of information in possession of the government, it had serious reason to doubt the truthfulness of testimony given by the same witness in other proceedings. Under the facts in *Mesarosh,* portions of the testimony given by the same witness in other proceedings were positively established as untrue and the Solicitor General at oral argument stated his belief that other parts of the testimony were untrue. On this basis, the Supreme Court remanded the case to the trial court for a new trial.

In light of the particular facts of *Mesarosh, supra,* where the United States conceded that the testimony of a key witness was or probably was untrue, there can be no question that a new trial was warranted.

However, in the case at hand no such concession by the government has been made. On the contrary, the United States maintains and contends that the testimony of both Dr. Rosenbloom and Mrs. Noll was completely and wholly truthful and that there was no perjury with respect to either witness. We hold that there is no merit to the defendant's contention of perjured testimony as set forth in grounds number two (2), three (3), seven (7), and eight (8) of the motion for new trial.

### Use of Unreliable Documentary Evidence

The court has also analyzed the trial transcript concerning the reliability and accuracy of the day books and patient charts of Dr. Rosenbloom.

We note that at page 158 of the trial transcript, Mrs. Noll testified as follows:

"Q. And if you had a very busy day, your day book wouldn't be accurate?

A. I would say ninety percent of the time it would be accurate."

Furthermore, in analyzing the testimony of Dr. Rosenbloom (Trial Tr. pp. 91–145), we find no evidence that would lead us to the conclusion that either the day books or the patient charts were inaccurate. Certainly, the record shows no evidence of the purposeful use of inaccurate documentary evidence (the day books and patient charts) by counsel for the United States to mislead or confuse the jury. We, therefore, conclude that there is no merit under the facts and records in this case to find any purposeful presentation of unreliable evidence and certainly no willful tactic on the part of the prosecutor to mislead the jury with inaccurate information.

### Prosecutorial Misconduct

The court has also analyzed the record in this case with a view towards the defendant's allegation of prosecutorial misconduct. We note that the United States Supreme Court in an oft-quoted passage commented as follows on the subject of prosecutorial misconduct:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." (*Ber-*

*ger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934).

■■■ We wholeheartedly agree with the Supreme Court's characterization of the responsibilities and obligations of United States Attorneys, but find no abuse of said obligation or responsibilities in this case.

### Conclusion

We have carefully considered all of the other grounds and subgrounds raised for relief by the defendant in his motion for new trial and conclude that none of said grounds or subgrounds present any viable reason to grant the motion for new trial.

Accordingly, an appropriate order will be entered denying the motion for new trial.

### APPENDIX

### MEMORANDUM

MARSH, District Judge.

A grand jury impaneled on July 31, 1979 returned an indictment on September 19, 1980 charging Robert A. Lebovitz with thirteen counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. The indictment alleged the conspiracy between Attorney Lebovitz and doctors to defraud insurance companies.

At the trial the government evidence disclosed that Lebovitz and another lawyer in his firm, Louis Kwall, conspired with Dr. Jack Pincus to submit inflated medical bills to insurance companies in connection with claims made on behalf of Lebovitz's clients for compensation for personal injuries caused by motor vehicles which included payment of their medical expenses.

On January 28, 1981, the jury found Lebovitz guilty of all fourteen counts in the indictment. The witnesses and abundant evidence produced by the prosecution proved that Lebovitz was guilty beyond a reasonable doubt. He was sentenced on March 5, 1981. The conviction was affirmed by the Court of Appeals,[1] and on April 19, 1982, certiorari was denied by the Supreme Court.[2]

On May 3, 1982, the defendant moved to dismiss the indictment on the grounds of "breaches of grand jury secrecy and flagrant and persistent prosecutorial abuses and misconduct occurring during the course of this investigation, which, under the totality of the circumstances, so tainted the grand jury proceedings and the resulting indictment as to require dismissal."

The defendant also moved for a "new trial and other appropriate relief and sanctions, as a result of violations of his Fifth Amendment rights, a violation of the *Federal Rule of Criminal Procedure 6(e)*, and under this Court's supervisory power."[3]

In our opinion, the motion for a new trial should be denied. None of the defendant's Fifth Amendment rights were violated. We find no prosecutorial misconduct, and we find no violation of Federal Rule of Criminal Procedure 6(e)(2), General Rule of Secrecy, and no one is subject to punish-

---

1. *United States v. Lebovitz,* 669 F.2d 894 (3d Cir.1982).

2. *Lebovitz v. United States,* 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982).

3. The motion contains 47 pages of which the first 10 pages set forth the motion and the following 36 pages set forth an "Appendix."

The first 10 pages of the "Appendix" consist of "Findings and Opinion" of Chief Judge Weber in the case of *United States v. David Litman, Esquire and Irving Portnoy, Esquire,* Criminal No. 81–16, which prosecution is one of a number of prosecutions of lawyers and doctors who allegedly produced false and inflated personal injury charges in cases defended by insurance companies who insured persons injured in accidents.

The next 14 pages contain the testimony of Daniel Saccani in the *Litman* case.

The next 3 pages contain the testimony of Robert J. Cindrich in the *Litman* case.

The next 5 pages contain the testimony of Russell Siano in the *Litman* case.

Attached is a copy of a letter dated November 14, 1980, written by Robert J. Cindrich, the then United States Attorney in this district to Kevin D. Rooney, an Assistant Attorney General.

Attached is a copy of a letter dated April 2, 1980, written by Daniel Saccani, Special Agent to John Mackin, Regional Manager of the Insurance Crime Prevention Institute (ICPI). Movant's Exhibit 12 in the *Litman* case.

ment by contempt. Dismissal of the indictment was not a punishment specified by Rule 6(e)(2) for violation of the General Rule of Secrecy.[4]

The following facts are stipulated by the parties.

1. Prior to January 14, 1980, Daniel B. Saccani was given access from time to time to personal injury claim files in the possession of the Postal Inspection Service which files were obtained from the law firm of Lebovitz, Lebovitz and Smith, P.A. through execution of a search warrant by U.S. Postal Inspectors on July 26, 1979.

2. Prior to January 14, 1980, Daniel B. Saccani was given access from time to time to records in the possession of the Postal Inspection Service of physicians which records were either obtained by execution of a search warrant on the office of the physician or which were voluntarily surrendered to the United States Postal Inspection Service by the physician.

3. Documents obtained as set forth in paragraphs 1 and 2 of this stipulation were shown to witnesses identified below who testified before a federal grand jury prior to January 14, 1980 to the extent the transcripts of said testimony so reflect.[5] Thereafter documents were returned to files from which they were taken.

| NAME | DATE OF TESTIMONY |
|---|---|
| Ruth Meyer | August 1, 1979 |
| Joan Posa | August 1, 1979 |
| David Nejack | November 13, 1979 |
| Martha Sanchesen | November 13, 1979 |
| Walter Sanchesen | November 13, 1979 |
| Sharon Campbell | November 13, 1979 |
| Pamela Smilack | November 13, 1979 |
| Sheldon Smilack | November 13, 1979 |
| Paul Joseph Decker | November 13, 1979 |
| Robert Anthony Halbleib | November 13, 1979 |

4. Documents shown to Joan Posa and Ruth Meyer during their testimony before the grand jury on August 1, 1979 were identified and marked as grand jury exhibits.

5. Documents shown to David Nejack, Martha Sanchesen, Walter Sanchesen, Sharon Campbell, Pamela Smilack, Sheldon Smilack, Paul Joseph Decker and Robert Anthony Halbleib were identified in the record (transcript) of testimony before the grand jury but were not marked as grand jury exhibits.

6. After documents were shown to the said witnesses before the grand jury, the documents were returned to the files from which they were taken.

7. Between August 1, 1979 and January 14, 1980 Daniel B. Saccani used files containing grand jury exhibits in the possession of the Postal Service which had been obtained through searches and by voluntary surrender (as stated in paragraphs 1 and 2 hereof) to the extent testimony of Saccani and Postal Inspector Robert Morgan on May 13, June 1 and June 2, 1982, and exhibits reflect such use.

8. Postal Inspector Morgan appeared before the grand jury on September 19, 1980 and utilized a chart (Exhibit "J") prepared by him in his testimony.

We find additional facts as follows:

9. The Insurance Crime Prevention Institute (ICPI), a non-profit corporation, was

---

4. Rule 6(e)(2) General Rule of Secrecy:
"A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. *A knowing violation of Rule 6 may be punished as a contempt of court.*" (Emphasis supplied).
Rule 6(e)3(A)(ii) provides as follows:

"(3) Exceptions.
"(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
"(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law."

5. No transcripts of the grand jury testimony have been ordered by the court, or ordered to be disclosed to anyone.

organized by the casualty insurance industry to investigate and detect fraud against insurance companies.[6]

10. Since 1977, Daniel Saccani was an employee of ICPI assigned to the Pittsburgh area. The postal inspectors requested Saccani to help them in the investigation of a number of lawyers and doctors including Robert A. Lebovitz and his law firm by serving as a liaison between the postal inspectors and the affected insurance companies. He was asked to locate and identify pertinent files in the possession of certain insurance companies, check names, assist the postal inspectors and government attorneys in interviewing witnesses, and otherwise make his services available to the investigating postal inspectors and government attorneys.

11. In 1977, Daniel Saccani became aware through his relationship with the postal inspectors that there was a group of five law firms that were being investigated for possible mail fraud violations.

12. The case against Attorney Lebovitz developed out of the investigation of Dr. Pincus.

13. Throughout the investigation, Saccani maintained an investigative maintenance file numbered NP 73135 (Defendant's Exhibit B) showing all of his activities in the investigation of the cases surrounding the various lawyers and doctors under investigation.

14. Saccani also kept a running report (Form 7) on the course of the various investigations he was involved in. A copy of these forms was sent monthly to ICPI headquarters; a copy was sent to the regional office and Saccani retained his agent's copy.

15. On June 20, 1979, Saccani began preliminary investigations of the law firm of Lebovitz, Lebovitz and Kwall, reviewing index reports and investigative notes.

16. Most of the information that Saccani obtained concerning the Lebovitz investigation was obtained from Dr. Pincus in the form of patient charts and patient bills and correspondence from Robert A. Lebovitz to Dr. Pincus which Dr. Pincus made voluntarily available to the postal inspectors. Furthermore, Saccani visited Dr. Pincus at his office where this information was discussed and his notes were turned over to Postal Inspector Siano.

17. Again on June 15, 1980, Saccani met with Postal Inspector Siano at Dr. Pincus' office for another review session of prior statements, and at this time Dr. Pincus turned over patient files to Postal Inspector Siano.

18. Saccani accompanied Postal Inspector Morgan on several interviews of individual patients of Dr. Pincus in relation to the Lebovitz case.

19. Saccani saw memoranda of interviews of witnesses prepared before they appeared before the grand jury. He conducted certain interviews of witnesses before they appeared before the grand jury.

20. Saccani participated in the service of subpoenas to obtain various insurance company files at the direction of the postal inspectors. He saw the contents of these files after they were subpoenaed. He also assisted in serving subpoenas on certain witnesses.

21. As a representative of ICPI Saccani was permitted to obtain, inspect and review the claim files of certain insurance companies, non-members of ICPI, without the necessity for the government to obtain subpoenas.

22. Saccani assisted Postal Inspector Morgan in preparing materials to be incorporated in a "letter of presentation." He assisted in gathering documents which were mailed, memoranda of interviews, patient charts, doctor bills, and correspondence between Lebovitz and Dr. Pincus.

---

**6.** The ICPI was established in 1971, when it appeared that insurance fraud had compounded into tremendous proportions, and, *inter alia,* involved professional people breaking their ethical obligations as well as the criminal law. Its role as a deterrent has become increasingly important. ICPI is presently supported by 400 member companies.

23. Saccani assisted Assistant United States Attorney Curry and Postal Inspector Morgan in preparing lists of persons to be subpoenaed from the insurance companies, identifying claimants, the insured persons, the dates of the motor vehicle accidents, and the claim file numbers.

24. Saccani further assisted Attorney Curry when subpoenaed witnesses were to be brought into his office prior to going into the grand jury room by reviewing their prior memoranda of interview, demeanor, and what Curry could expect from them.

25. Saccani took an active part in helping postal inspectors find and identify documents; and he discussed witnesses and documents with Attorney Curry.

26. Saccani reviewed with several individuals their previously given statements before they went into the grand jury room to give their testimony.

27. Saccani was present with Postal Inspectors Siano and Morgan and Attorney Curry at interviews with witnesses before they went into the grand jury room, and said witnesses were read their prior memoranda of interview and asked if they agreed with those prior statements.

28. Saccani was a valuable aid in the Lebovitz investigation and other investigations conducted by the postal inspectors and the United States Attorneys.

29. Saccani was never present in the room occupied by the Lebovitz grand jury as a witness or otherwise.

30. Saccani did not at any time read a transcript of any grand jury testimony in the Lebovitz case.

31. Saccani did not at any time read any summary of a witnesses' grand jury testimony.

32. Saccani did not disclose to any person other than the postal inspectors and the United States Attorneys involved, any matters which were expected to occur before the grand jury. He did not reveal to anyone other than the aforesaid federal officers, the identity of persons who would be called to testify before the grand jury, the content of their testimony, nor did he reveal to anyone when the grand jury would return an indictment.

33. Saccani did not present any information in this case to the grand jury; nor did he participate in any decision with respect to which claims would be included in an indictment. Saccani did not participate in any decisions with respect to which documents would be subpoenaed for the grand jury; nor any decision as to which or when witnesses would be called to testify; nor whether an indictment would be presented to the grand jury.

34. In the *Litman* case, Saccani was made an agent of the grand jury. He was not made an agent of the grand jury in the *Lebovitz* case. This factor adequately distinguishes his actions in the *Lebovitz* case from his actions in the *Litman* case.

35. As a result of investigations participated in by Saccani, successive grand juries returned indictments for mail fraud against several lawyers and doctors who have been convicted. The *Litman* case is in trial at this time.

## CONCLUSIONS OF LAW

We do not find any violation of Federal Rule of Criminal Procedure 6(e) committed by Daniel Saccani nor by Postal Inspectors Morgan and Siano, nor by Assistant United States Attorney Curry or any other United States Attorney concerned with the Lebovitz case which would warrant a contempt citation.

The ICPI did not instigate the grand jury investigation of the Lebovitz law firm or of Robert A. Lebovitz.

Daniel Saccani, an agent of ICPI, did not coordinate and potentially direct the Lebovitz grand jury investigation.

There was no prosecutorial misconduct in improperly influencing witnesses subpoenaed before the grand jury.

There was no prosecutorial misconduct by committing breaches of grand jury secrecy.

The defendant, Robert A. Lebovitz, was indicted by an impartial and unbiased grand jury.

Information obtained by Daniel Saccani from sources independent of the grand jury proceedings does not violate Rule 6(e).

Access to documents which later were marked as grand jury exhibits and submitted to the grand jury did not constitute disclosure of matters occurring before the grand jury. Cf. *United States v. Stanford*, 589 F.2d 285 at 291 (7th Cir.1978), cert. denied 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979).

The documents and files obtained and observed by Saccani did not reveal the essence of what took place in the grand jury room or anything about the grand jury investigation. Cf. *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980).

Service of subpoenas *ad testificandum* and subpoenas *duces tecum* by Saccani did not constitute a violation of Rule 6(e).

There was no direct disclosure of the actual testimony of any witness appearing before the grand jury. No unauthorized person entered the grand jury room during the presentation of testimony.

There is no support in the record that witnesses subpoenaed before the grand jury were improperly influenced by prosecutorial misconduct, or by Daniel Saccani, or by the postal inspectors involved, i.e., Morgan and Siano.

The defendant, Lebovitz, made no showing of how any activity of Saccani, the postal inspectors or the government attorneys prejudiced him before the grand jury which would justify dismissal of the indictment.

The defendant, Lebovitz, has not demonstrated any prejudice whatsoever to him in his trial by Saccani, the postal inspectors or the government attorneys which would justify dismissal of the indictment.

## DISCUSSION

### A.

To dismiss the Lebovitz indictment in the absence of any showing of prejudice in a fair trial and grand jury proceedings would constitute a "punishment of society." *United States v. Stanford*, 589 F.2d 285, 299 (7th Cir.1978), *cert. den.* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979).

Rule 6(e) of the Federal Rules of Criminal Procedure provides that "matters occurring before the grand jury" must be shielded from disclosure.

As the Seventh Circuit Court of Appeals has said in *In Re September 1971 Grand Jury*, 454 F.2d 580, 583 (7th Cir.1971):

"... '[G]rand jury secrecy' is no magical incantation making everything connected with the grand jury's investigation somehow untouchable." (Citations omitted.)

In *Stanford, supra*, the court held that not all documents submitted to a federal grand jury are within the special protection of the rule. At page 291 it is stated:

"The restrictions of Rule 6(e) apply only to 'disclosure of matters occurring before the grand jury.' Unless information reveals something about the grand jury proceedings, secrecy is unnecessary.
"... Unlike testimony, documents are created for purposes other than the grand jury investigation; they are therefore more likely to be useful for purposes other than revealing what occurred before the grand jury. See *Illinois v. Sarbaugh*, 552 F.2d 768, 772 n. 2 (7th Cir.), *cert. den.*, 434 U.S. 889 [98 S.Ct. 262, 54 L.Ed.2d 174] (1977). Persons may have a legitimate interest in documents so that disclosure to them does not constitute disclosure of matters occurring before the grand jury." (Footnote omitted; citations omitted.)

In *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960) it is stated:

"... Thus, when testimony or data is sought for its own sake—for its intrinsic value in furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure ... that the

same documents had been, or were presently being, examined by a grand jury...."

In addition to *Interstate Dress Carriers,* other cases have held that documents subpoenaed before the grand jury sought for their own "intrinsic value" and not to discover what has happened in grand jury proceedings are not protected by the secrecy provisions of Rule 6(e). *Capitol Indem. Corp. v. First Minn. Const. Co.,* 405 F.Supp. 929 (D.Mass.1975); *United States v. Saks & Co.,* 426 F.Supp. 812 (S.D.N.Y. 1976); *Davis v. Romney,* 55 F.R.D. 337 (E.D.Pa.1972); 50 ALR Fed 675, 681–683, § 3[b] (1980).

The Court of Appeals for the Third Circuit adopted the tests in *Stanford* and *Interstate Dress Carriers.* See *In re Grand Jury Investigation,* 630 F.2d 996 (3d Cir. 1980). The court stated at page 1000:

"... [T]he policy of secrecy is not absolute. *United States v. Stanford,* 589 F.2d 285, 291 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). Rule 6(e) shields solely 'matters occurring before the grand jury.' It is designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process.... The mere fact that a particular document is reviewed by a grand jury does not convert it into a 'matter occurring before the grand jury' within the meaning of 6(e)...." (Citations omitted.)

### B.

The defendant relies upon *United States v. Tager,* 506 F.Supp. 707 (D.Kan.1979). In that case grand jury materials and transcripts of testimony of witnesses in the grand jury proceedings were disclosed to Mr. Ed House, an ICPI agent. House also delivered documents to the grand jury room. We do not believe the *Tager* case is on point.

In the Lebovitz case, Saccani did not see any transcripts of testimony of witnesses who testified before the grand jury, and Saccani never entered the grand jury room.

In addition, the defendant argues, citing *Tager,* that Saccani, being an agent of the insurance companies, the victims of the Lebovitz crimes, is sufficient per se to dismiss the indictment returned against him. We disagree.

Defrauded insurance companies have records of relevant documents, employees and former claimants. It was necessary that an agent correlate the document files and witnesses in order that the government attorneys could present them to the grand juries.

"... Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented ...." *United States v. Thompson,* 576 F.2d 784, 786 (9th Cir. 1978).[7]

There is nothing shocking to the conscience in the circumstances of the grand jury indictment of the defendant. Lebovitz, nor any showing of prejudice at his trial.

The defendant's argument that the participation of the victims' agent in a grand jury investigation should authorize a per se dismissal of the indictment is refuted by Judge Van Dusen's statement in *United States v. Birdman,* 602 F.2d 547, 558 (3d Cir.1979):

"However, to attempt to serve a public interest in the purity of the grand jury proceeding, by the per se sanction of dismissing indictments, is to disserve another public interest by frustrating prosecutions of criminals...."

As heretofore indicated the punishment specified for violation of Rule 6(e) is "contempt," not per se dismissal of the indictment.

---

**7.** See also: *United States v. Kennedy,* 564 F.2d 1329, 1335–1336 (9th Cir.1977) citing *Costello v. United States,* 350 U.S. 359, 363–364, 76 S.Ct. 406, 408–409, 100 L.Ed. 397 (1956); *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

No postal inspector or government attorney participating in the grand jury investigation of Lebovitz was guilty of contempt.

It is important that the defendant demonstrate a real possibility of harm before the court takes the drastic step of dismissing the indictment because of disclosure of prepared material prior to the grand jury proceedings. The veil of secrecy covers the grand jury proceedings themselves,—not the subject matter of the investigation or statements made by persons before grand jury testimony is given.

### C.

In *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) at page 365, it is stated: "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." (Footnote omitted.)

In *United States v. Owen*, 580 F.2d 365, 367–368 (9th Cir.1978), it is stated:

"... [S]ome courts have suggested that the exercise of a court's supervisory powers is not contingent on a showing of prejudice. For example, the D.C. Circuit recently stated that 'serious prosecutorial misconduct may so pollute a criminal prosecution as to require dismissal of the indictment .... without regard to prejudice to the accused.' *United States v. McCord*, 166 U.S.App.D.C. 1, 16, 509 F.2d 334, 349 (1974), *cert. den.*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975).... However, under the better view, which we adopt, other courts have demanded that there be some prejudice to the accused by virtue of the alleged acts of misconduct. An example of this position is *United States v. Acosta*, 526 F.2d 670, 674 (5th Cir.), *cert. den.*, 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373 (1976), a case reversing a district court's dismissal for outrageous prosecutorial misconduct and stating:

'Defendants are entitled to take advantage of any error which prejudices their case but they are not entitled to a reward for such conduct *unless it could have had at least some impact on the verdict* and thus redounded to their prejudice.' (Emphasis supplied.) (Citations omitted.)

"Even in the face of a 'no prejudice' rule, a dismissal would not be required. As *McCord* states, a reversal may be appropriate where misconduct 'pollutes' a prosecution. *Here, there was no such effect on the proceedings....*" (Emphasis supplied.)

There was no proof of disclosure of grand jury secrecy and no showing of prejudice to the defendant.

An appropriate order will be entered denying the defendant's motions.

DATED: November 17th, 1982.

cc. David M. Curry     Robert A. Lebovitz, Esq.
Assistant U. S. Attorney     2018 Monongahela Avenue
Pittsburgh, PA 15218

James K. O'Malley, Esq.
The Colonial Building     (CERTIFIED MAIL)
205 Ross Street
Pittsburgh, PA 15219

(CERTIFIED MAIL)

### ORDER OF COURT

AND NOW, this 17th day of November, 1982, after hearing and due consideration of the briefs of the defendant and the government, IT IS ORDERED, ADJUDGED AND DECREED that the defendant's motion to dismiss the indictment returned by the grand jury on September 19, 1980, be and the same is hereby denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant's motion for a new trial and "other appropriate relief and sanctions" be and the same is hereby denied.

IT IS FURTHER ORDERED that the defendant, Robert A. Lebovitz, report to the United States Marshal, 810 United States Courthouse, Seventh and Grant Streets, Pittsburgh, Pennsylvania, on Tuesday, November 30, 1982, at 10:00 a.m., to commence service of the sentence of imprisonment imposed by this court on March 5, 1981.

IT IS FURTHER ORDERED that this order and the accompanying opinion issued this date be sealed pending the conclusion

of the trial in *United States v. Litman*, Criminal No. 81–16, now pending before another member of this court.

cc: David M. Curry
Assistant U. S. Attorney

James K. O'Malley, Esq.
The Colonial Building
205 Ross Street
Pittsburgh, PA 15219

(CERTIFIED MAIL)

Robert A. Lebovitz, Esq.
2018 Monongahela
Avenue
Pittsburgh, PA 15218

(CERTIFIED MAIL)

Mr. John T. Dellemarre
Bureau of Prisons
2002A Federal Building
Pittsburgh, PA 15219